Good morning, Your Honors. My name is Saul Serra. I'm appearing on behalf of the appellant Jerome Feitelberg, who is the plaintiff in this action in the District Court. Your Honors, pleadings are to be construed to do substantial justice under Rule 8F of the Federal Rules of Civil Procedure, and I would like to demonstrate to the Court now why an affirmance of this act relates to events that actually have occurred subsequent to the submission of the briefs in this matter. And that has to do with the federal court litigation regarding Merrill Lynch's research practices. There was an MDL proceeding. There were dozens of cases filed under the federal securities laws that were transferred to Judge Milton Pollack in the Southern District of New York. Judge Pollack has determined that none of those cases state a federal securities law claim. There are no federal securities law claims arising out of Merrill Lynch's conduct that is at issue in this case that are survivable. So when Judge Patel directed us to amend, to plead a federal securities law claim, she was effectively asking us to commit Harry Carey, which is the reason why in the first instance ---- Well, you know, that's a problem that you should take to Congress. I mean, that's why it enacted SLUSA. Well, I don't ---- No, Your Honor, I don't think so, because when you examine Judge Pollack's decisions, which are at 272 FEDSUF 2nd 243, he determined that this fact pattern ---- the fact pattern, not the failure of the pleading, but the fact pattern itself did not fall within a federal securities law claim. That is why we determined to ---- when we brought the case, we reached a similar conclusion before Judge Pollack rendered his decisions dismissing the vast majority of these research-related claims. We concluded that the fact pattern did not support a federal securities law claim. We weren't interested in pleading that claim, and we did not plead a fraudulent scheme claim. We pled a claim premised on Merrill Lynch's misconduct that harmed not only investors in Merrill Lynch, but more particularly Merrill Lynch's competitors in the investment banking business, and Merrill Lynch's ---- and customers of other investment banking firms who may have been impacted by this conduct. We brought the claim under the statute designed to protect the general public, because we realized, as vindicated by these more subsequent decisions, that this did not fit within a fraud claim cognizable under the federal securities laws. And I think the decision of the district court in this case to force us into a claim that we never pled, we never had any intention of pleading, we never made a pretense of attempting to plead such a claim, we weren't interested in that claim. This claim that we pled is truly more analogous to the claim in Green v. Ameritrade in the case in which Judge Bright was on the panel of the Eighth Circuit that I think the subsequent events, dismissal of all these federal claims, proves that we are correct. And this is ironic. SLUSA was purportedly enacted to protect public companies from what were pejoratively characterized as strike suits by imposing the more severe pleading requirements of the Private Securities Litigation Reform Act. But here the claim arises out of the findings of the New York Attorney General of actual wrongdoing by Merrill Lynch. No one contends that there was no wrongdoing here. There clearly was. This is not a case where SLUSA's policy is being vindicated by having us removed and then obviously dismissed is what's going to happen if we were forced to plead the claim. There's no policy under SLUSA that is worthy of protection here. In fact, when New York Attorney General Eliot Pollock announced the settlement giving rise to the imposition of sanctions in the amount of $100 million and more against Merrill Lynch, he said the reason we're doing that is we're putting the information out in the public domain so private investors can pursue claims. That is what we have done. Now, Judge Pollock in the federal court has determined that these facts are not federal securities claims. Well, if they're not that and they're not a claim designed to protect the public If you look at ERISA, for example, ERISA preemption, it happens all the time. I mean, somebody brings a suit and it's preempted and they have to replead under ERISA and maybe can't do it. That's all. Well, this is It just happens. It's tough luck, but it happens. And that's the reason for having the legislation there in the first place. Well, Your Honor, I don't think under this factual scenario that we should be a victim of that tough luck because I think this is a unique situation involving Merrill Lynch Maybe you could explain why it is that this case does not involve conduct that has the effect of manipulating stock and that's what caused injury to your clients. Your Honor, that is not the It may incidentally have had that effect, Your Honor, but Your Honor If it doesn't, then you have no claim, I would think. No, Your Honor, we do under 17200 because that is a California statute that has extremely broad application to various types of scenarios. In fact, there's case law that we've cited in our brief that talks about, you know, the inventions Okay. I mean, am I misreading the gist of the allegations that the internal investment banking side influenced the brokerage side to manipulate, in effect, the price of the stock in order to benefit the investment banking side? It's the manipulation of the price of the stock portion of it, Your Honor, that is not that is extraordinarily tangential to what we've alleged. Okay. But is it not there? Well, Your Honor, I cannot deny that public reports issued by Merrill Lynch that were contrary to their internal beliefs as to the true value of these stocks had some impact on the stock price, but that's not our case, Your Honor. That is not our case and that is the error of the appellees in their brief and is the error of the district court. They have unfairly misconstrued our case to slot it into this little sluice area and get it out so that it could be dismissed by Judge Pollack. That is not, in fairness, Your Honor, what we have alleged. We've challenged the internal practices of Merrill Lynch. There were ancillary effects. We're not purporting to deal with, through litigation, all of those ancillary effects. We're simply saying that there was an internal process here that was unfair to the general public, unfair to Merrill Lynch's competitors, unfair to customers of stocks. That is true, but the case is not premised. It is not like a 10b-5 case that you're going to hear later today, like Clorox and one of those complaints where you have statements alleged and then they try and say why they're false or misleading each time. That's not the complaint. I have two questions. Yes, Your Honor. First question is, do we have Judge Pollack's case that you talked about? Has that been sent in to us? I submitted it by letter, Your Honor, yes. Because I haven't read it yet. Secondly, is one of your claims for damages for the members of the class? No. It's not? No, Your Honor. You cannot get damages under this California statute. It's a literal impossibility. What are you going to get out of the California statute? We are going to get equitable relief in the form of non-restitutionary disgorgement of profit. Money. Well, Your Honor, we've members of the class, are you saying? If you've got disgorgement, you're saying Merrill Lynch made $20 million and so they've got to give up $20 million. Who gets it? Your Honor, I think in light of recent California Supreme Court authority that cited in the briefs Korea Supply and the like, this is going to be a CyPray award that is going to go to members of the class as we have defined it. Are you distinguishing that from damages which are part of the securities 10b-5 claims? Absolutely, Your Honor. Okay. You've answered my question. Thank you. You haven't got too much time, so I don't want to take any more of your time. Okay. Thank you, Your Honor. Excuse me. I would like a follow-up on that question. Yes. How do you distinguish the Bertram case? Aren't you really seeking restitution for the difference between what you paid for the stock and the true value of the stock? No. We are absolutely not seeking any kind of measure of damage that arises under the securities laws. We are not doing that, Your Honor. What we have pled is disgorgement of their profit. We are not relying on an out-of-pocket measure. The difference between what you paid and what you should have paid had a fraud being revealed. That is not our case. That is not our case, Your Honor. Our case is they made hundreds and hundreds of millions of dollars in investment banking fees. They have only had to pay a fraction of that through the settlement. We are trying to get disgorgement of their profit earned through an internal business practice that was wrongful. I would like to reserve whatever remaining time I have. Let me just follow up on that for one second. Yes, Your Honor. SLUSA, as I read it, does not adopt California's distinction between damages and the remedies available for a violation of Section 17200. Isn't that correct? It's correct, but SLUSA is not our claim, Your Honor. Our claim is 17200. We've only – you have to go according to what our complaint is and what I started with, a substantially fair reading of the pleading to do justice. Our pleading can in no way be construed to seek a traditional damage remedy under securities laws under SLUSA. It is purely equitable in nature, and that is the nature of the claim, and it is – of course you can ferret through these things and try to find isolated words that might support the idea that this is a traditional fraud claim where you're seeking an out-of-pocket damage remedy such as might be a common-law fraud claim or under a negligent misrepresentation claim. But that is wrong to do that. That is not the case that was pled, Your Honor. The case that was pled was purely equitable in nature, seeking equitable disgorgement remedies. Thank you. All right. Mr. Dickey. May it please the Court, Jonathan Dickey of Gibson, Dun & Crutcher for the Merrill Lynch Appellees. Also with me at counsel's table is Courtney Power of our office. Your Honor, I want to come back to your question to appellant's counsel, which is astonishing in how counsel responded to your straightforward question. Is this about deceptive and misleading research reports that cause injury to class members? Let me read from plaintiff's complaint in the trial court proceedings. Plaintiff's claim is typical of those of the class members. Plaintiffs and the class members purchased stocks for which deceptive and misleading ratings and or research reports were issued. That's paragraph 33. Paragraph 31 defines the class as purchasers of those stocks who were injured thereby. I think factually there's no question on this record that this case lines up squarely with the statutory text of SLUSA. Let me come back to sort of first principles. And, of course, Your Honors are aware this is not the first time that the Ninth Circuit has addressed SLUSA. We have two decisions from this court in Patanod and Falkowski, which essentially take a extremely broad reading of the statutory purpose and the statutory effect of SLUSA. What I think appellants would have this panel do is really defy traditional longstanding rules of statutory construction. And they ask you to do that in at least three or four ways. First, they ask you to ignore the fact that there is no statutory basis in the text for any reading that Congress intended to exempt from the term damages any monetary relief in the form of disgorgement or restitutionary damages under state law. What would your position be different if the California statute said, and you'll be fine with that, and the money will go to the California Treasury? Well, I would not be fine with that. But let me elaborate. What Korea Supply, the California Supreme Court has said, is that what plaintiffs are seeking here, I think they've conceded this in their papers, is non-restitutionary disgorgement. What Korea Supply, California Supreme Court has said, is that is damages under California law. So even if you were to apply... Isn't this also in the nature of a consumer fraud case? No, Your Honor. I believe it's in the nature of a 10B5 claim seeking relief on behalf of a class of purchasers of common stock of companies due to fraud. Well, you're saying that there should be a broad reading of the statute, and I know the case law says that there should be a broad reading of the statute. That is the exclusive way to attack a company which has been, which has not been fair to the public, and the public is misled, and it is not brought under 10B5. I would disagree in this respect, Your Honor. I believe SLUSA and the congressional intent was clear that this would be an unconstitutional case. It would be a case where you have a nationally traded set of securities, there's no dispute about that, where you have allegations of misrepresentations in connection with a purchaser's sale of securities, and you have a request for monetary relief in the form of damages. Judge Patel was quite right in holding that this court's case law makes clear that the form of monetary relief being sought here is unconstitutional. Now, if you look at Judge Barefoot-Sanders' district court opinion in Wall, do you think that gives some pause for thought and some aid and comfort to the plaintiffs? Well, on the pertinent issues here of whether this is damages or not, I would again cite, Your Honors, to decisions within this circuit, and I think those are persuasive, Your Honor cited the person case. But you don't think much of Barefoot-Sanders' opinion. It's out-of-circuit authority, and I concede that there are decisions from other circuits, district courts and other circuits, that go the other way. Well, then, if that is the case, I don't know why your firm wants sanctions here. It seems to me it is a difficult case, and I see too much of it, of lawyers seeking sanctions all the time if they disagree. But I'm speaking just as a judge from the Eighth Circuit who also sits around a little bit. Your Honor, I think there's three cases that really control the outcome of this appeal. And we've said this in our trial court papers. We've said it to Your Honors. The SEC versus Zanford case absolutely makes clear that the in connection with requirement is met here. Falkowski, controlling Ninth Circuit law, follows Zanford and applies the in connection with test broadly. And Pathanaud, from this circuit, upholding a district court decision, finding that whereas here the claim for monetary relief is in the form of discouragement or restitution, that constitutes damages for exclusive purposes. The fact that the Ninth Circuit decision did not reach that issue is of no moment because that holding of the district court was indeed jurisdictional. This court necessarily needed to assume jurisdiction to have reached the result it reached in Pathanaud, and part of the underlying jurisdictional fact was the presence of damages. So we believe Pathanaud district court decision clearly speaks to the outcome here. We think this court has effectively affirmed that reading of SLUSA in Pathanaud. I want to make one point of order as well. I just learned this yesterday. There is another panel of this court that is addressing the issue of SLUSA damages. It is the case of United Investors Life Insurance versus Waddell and Reed. It's appeal number 0256278. This was argued and submitted on October the 10th. And I believe the issue. And who was on the panel, do you know? I believe that's Judges Wallace, Judge Reimer, and I'm not remembering who the third member of the panel was. In all events, I believe, Your Honor, coming back to my point about how this does violence to standard rules of statutory construction, what appellants would also have you do is ignore the in connection with requirement as interpreted by the U.S. Supreme Court and read into this statute a privity requirement. One reads the reply brief to say that the statute as applied to these facts must necessarily limit itself only to situations where Merrill Lynch was the seller of securities to investors. And that's how counsel purports to read into SLUSA some privity requirement which is not there, once again doing violence to standard rules of statutory construction. And lastly, effectively reading into the statute a scienter requirement that is not there. Counsel didn't speak to that issue. I won't dwell on it, but I think the majority of courts who have addressed this issue have held, as I think this panel should, that there is no basis under the plain statutory text to read into SLUSA a scienter requirement. Even if that was so, however, we believe that the plain text of their complaint necessarily purports to allege a scienter. Judge Patel in the trial court proceedings found that to be so and that the allegations of deception and manipulative intent smacked of scienter. So I don't believe this panel even needs to reach the issue of scienter because it so clearly matches up with SLUSA We have about 27 seconds. Your Honor, it's fundamentally wrong to characterize this claim as alleging scienter and intention to defraud. That is not what the complaint, viewed as a whole, fairly read, alleges. It is absolutely not. The Ninth Circuit authorities cited by counsel do not control this decision because they were distinguishable. Pat now turned on whether a deferred annuity was a security. Falkowski was a clear accounting fraud, typical of a securities fraud case. So they don't control here. The California Supreme Court decision in Korea Supply, Your Honor, does indicate that an equitable remedy of nonrestitutionary disgorgement, not damages, is clearly available. One last point. We have read the briefs and your time has expired. Thank you.  As advertised, we will now hear argument in Florida.
judges: Bright , Dw Nelson, Rymer